**JAFFE GLENN LAW GROUP, P.A.**
Jodi J. Jaffe
Andrew Glenn
Lawrence Office Park
Building 2, Suite 220
168 Franklin Corner Road
Lawrenceville, New Jersey 08648
Telephone: (201) 687-9977
Facsimile: (201) 595-0308
Attorneys for Plaintiff Francisco Suarez

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted pro hac vice)
Camar Jones (admitted pro hac vice)
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
Attorneys for Plaintiff Francisco Suarez

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FRANCISCO SUAREZ, on behalf of himself and all others similarly situated,**<br><br>                     **Plaintiffs,**<br>    **-against-**<br><br>**JENNIFER CONVERTIBLES, INC. a New York corporation,**<br><br>                **Defendant.** | No. 14-cv-02050-ER |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR AN ORDER APPROVING A FAIR LABOR STANDARDS ACT SETTLEMENT AND DISMISSING THE LAWSUIT WITH PREJUDICE

Plaintiff FRANCISCO SUAREZ ("SUAREZ") and Opt In Plaintiffs ERIK RAMOS ("RAMOS") and TAIYANNIS BROWN ("BROWN") (collectively, "Plaintiffs") and Defendant JENNIFER CONVERTIBLES, INC. ("Defendant") (together with Plaintiffs, the "Parties"), hereby jointly move for an Order approving their Fair Labor Standards Act ("FLSA") settlement ("Approval Order"), and state as follows:

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

I.      FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 1

      A.  Factual Allegations ................................................................................... 1

      B.      Overview of Investigation ......................................................................... 3

      C.      Settlement Negotiations ............................................................................ 3

II.     SUMMARY OF THE SETTLEMENT TERMS .......................................................... 5

      A.      The Settlement Amount ............................................................................ 5

      B.      Releases .................................................................................................... 6

      C.      Attorneys' Fees and Litigation Costs ....................................................... 6

      D.      Service Award .......................................................................................... 7

      E.      Settlement Claims Administrator .............................................................. 7

III.    SETTLEMENT PROCEDURE ................................................................................... 7

IV.    MEMORANDUM OF LAW ...................................................................................... 12

      A.      The Parties' Settlement Should Be Approved As Fair and Reasonable ............. 12

      B.      The Settlement Terms Are Fair and Reasonable ................................................. 15

      C.      The Court Should Approve the Proposed Notice and Direct Its
           Dissemination to the Plaintiffs ................................................................. 19

      D.      The Service Payment to the Plaintiff SUAREZ Should Be Approved As
           Fair and Reasonable ................................................................................. 20

      E.      Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable .......... 23

# TABLE OF AUTHORITES

**Page**

Aros v. United Rentals, Inc.,
  Nos. 10 Civ. 83, 11 Civ. 1281, 11 Civ. 1282, 11 Civ. 1283, 11 Civ. 1284, 11 Civ.
  1285, 2012 WL 3060470 (D. Conn. July 26, 2012) ....................................................12, 18, 21

Brask v. Heartland Automotive Servs., Inc.,
  No. 06-CV-11, 2006 WL 2524212 (D. Minn. Aug. 15, 2006) (adopted by Brask v.
  Heartland Automotive Servs., Inc., No. 06-CV-11 (RKH/AJB), 2006 U.S. Dist.
  LEXIS 62313 (D. Minn. Aug. 30, 2006))..........................................................................12, 13

Braunstein v. E. Photographic Labs., Inc.,
  600 F.2d 335 (2d Cir. 1978), cert. denied, 441 U.S. 944 (1979) ............................................21

Capsolas v. Pasta Resources Inc.,
  No. 10 Civ. 5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ...............................................22

D. A. Schulte, Inc. v. Gangi,
  328 U.S. 108 (1946).................................................................................................................11

Danieli v. Int'l Business Machines Corp.,
  No. 08-CV-3688 (SHS), 2009 U.S. Dist. LEXIS 106938 (S.D.N.Y. Nov. 16, 2009)............18

deMunecas v. Bold Food, LLC,
  No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ............................................21

Dixon v. Zabka,
  No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) .............................................12

Frank v. Eastman Kodak, Co.,
  228 F.R.D. 174, 187 (W.D.N.Y. 2005)..............................................................................19, 20

Hens v. Clientlogic Operating Corp.,
  No. 05-CV-381S, 2010 U.S. Dist. LEXIS 139126 (W.D.N.Y. Dec. 19, 2010)................12, 13

In Re Janney Montgomery Scott LLC Fin. Consultant Litig.,
  No. 06-CV-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)............................18

Lynn's Food Stores Inc. v. United States,
  679 F.2d 1350 (11th Cir. 1982) ...............................................................................11, 12, 13

Manning v. New York Univ.,
  No. 98-CV-3300 (NRB), 2001 U.S. Dist. LEXIS 12697 (S.D.N.Y. Aug. 21, 2001)..............11

# TABLE OF AUTHORITES
### (continued)

Page

Mateo v. Greenwich Vill. Entm't Group LLC,
   No. 10-CV-2465 (DLC), 2011 U.S. Dist. LEXIS 9467 (S.D.N.Y. Feb. 1, 2011) ......................
   ....................................................................................................................11, 12, 13, 16

McMahon v. Olivier Cheng Catering & Events, LLC,
   No. 08 Civ 8713 (PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)...............12, 13, 18, 21

Medley v. Am. Cancer Soc'y,
   No. 10-CV-3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010) ..........................12

Mendez v. Nooch, Inc.,
   No. 07-CV-11174 (LLS) (RLE), 2009 U.S. Dist. LEXIS 128160 (S.D.N.Y. Jan. 7,
   2009) ......................................................................................................................11

Morris v. Affinity Health Plan, Inc.,
   No. 09 Civ. 1932, 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011)............................................17

Palacio v. E*Trade Fin. Corp.,
   No. 10 Civ. 4030, 2010 WL 2384419 (S.D.N.Y. June 22, 2012)...........................................20

Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.,
   No. 08 Civ. 7670, 2010 WL...................................................................................19

Pessoa, et al. v. Countrywide Home Loans, Inc.,
   No. 06-CV-1419-Orl-JGG, 2007 U.S. Dist. LEXIS 24076
   (M.D. Fla. Apr. 2, 2007) ...............................................................................13, 15, 16

Roberts v. Texaco, Inc.,
   979 F. Supp. 185 (S.D.N.Y.1997)............................................................................19

Sand v. Greenberg,
   No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)...........................................21, 22

Scott v. City of New York,
   No. 02-CV-9530 (SAS), 2009 U.S. Dist. LEXIS 120532 (S.D.N.Y. Dec. 21, 2009) .......14, 15

Silberblatt v. Morgan Stanley,
   524 F. Supp. 2d 425 (S.D.N.Y. 2007)....................................................................19

Stalnaker v. Novar Corp.,
   293 F. Supp. 2d 1260 (M.D. Ala. 2003) ..............................................................12, 13

# TABLE OF AUTHORITES
(continued)

Page

Torres v. Gristede's Operating Corp.,
  Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937 (S.D.N.Y. June 1,
  2010) ..................................................................................................................................18

Vazquez v. Ranieri Cheese Corp.,
  No. 07 Civ. 464, 2011 WL 554695 (E.D.N.Y. Feb. 7, 2011).................................................21

Velez v. Majik Cleaning Serv.,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)....................................19, 20

Walton v. United Consumers Club,
  786 F.2d 303 (7th Cir. 1986) ................................................................................................14

In re Wells Fargo Loan Processor Overtime Pay Litig.,
  MDL No. 07-1841, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) .........................................20

Willix v. Healthfirst, Inc.,
  2011 WL 754862 ...................................................................................................................21

Wren v. RGIS Inventory Specialists,
  No. 06 Civ. 5778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ) supplemented, 2011
  WL 1838562 (N.D. Cal. May 13, 2011) .................................................................................21

**STATUTES, RULES & REGULATIONS**

29 U.S.C. § 207(a)(1).................................................................................................................14

29 U.S.C. § 216 (b) ........................................................................................................14, 19, 21

29 U.S.C. § 255(a) .....................................................................................................................15

29 U.S.C. § 260............................................................................................................................14

Fair Labor Standards Act..............................................................................................................9

FLSA....................................................................................................................................... passim

New York Labor Law...........................................................................................................2, 3, 9, 21

Rule 23...................................................................................................................................18, 19

**OTHER AUTHORITIES**

NYLL Article 19 §§ 650 et seq....................................................................................................2

## INTRODUCTION

The Parties have agreed to settle this wage and hour collective action for the total gross amount of ninety-five thousand dollars ($95,000.00).  A copy of the Settlement Agreement is attached as **Exhibit 1**.

By this Motion, the Parties respectfully request that the Court:  (a) approve the settlement; (b) conditionally certify the asserted collective action for purposes of settlement; (c) approve the proposed Notice of Settlement ("Notice") attached to the Settlement Agreement; (d) approve the release language set forth in the Notice, in the Consent To Join And Release Form, and in the other settlement papers; and (e) dismiss this action with prejudice, but reserve jurisdiction to enforce the terms of the Settlement Agreement.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On March 24, 2014, SUAREZ filed a "Class And Collective Action Complaint" (the "Complaint") [DE 2].  In the Complaint, SUAREZ alleges that Defendant employed him from November 2009 to September 2013 in a Jennifer Convertibles retail store located in Bronx, New York.  (Cplt. ¶¶4-6).  He alleges that he was initially employed as an hourly-paid, non-exempt Salesperson until approximately December 2010.  (Cplt. ¶5).  Thereafter, SUAREZ alleges, he was employed as a non-exempt, hourly paid Store Manager until the end of his employment. (Cplt. ¶6).

After SUAREZ filed his Complaint, on March 27, 2014, RAMOS and BROWN filed Notices of Consent to Join this action, and became Plaintiffs.  [DE 7, 8].  BROWN alleges that she has been employed by Defendant since 2003, in non-exempt, hourly Salesperson and Store Manager positions.  RAMOS alleges that he was employed by Defendant from April 2011 to

September 2013.   He alleges that he was initially employed as a non-exempt, hourly-paid Salesperson, and then received a promotion to non-exempt, hourly-paid Store Manager.

In the Complaint, SUAREZ alleges that, during his employment, Defendant willfully violated the FLSA and violated the wage and hour laws of New York (NYLL Article 19 §§ 650 *et seq*., hereinafter referred to as "New York Labor Law") by paying him and similarly situated employees for *some* of their overtime hours worked, instead of for *all* actual overtime hours worked.   According to the Complaint, Defendant only paid a portion of the hours SUAREZ and similarly situated employees worked, instead of all of the hours they worked.   In the Complaint, SUAREZ defines these allegedly similarly situated employees as follows:

> All non-exempt, hourly Salespersons and/or Store Managers, and similarly situated employees, however variously titled, who have worked at any of Defendant's locations throughout the United States during the applicable statute of limitations period.

*Id.* at ¶ 13.   The Complaint seeks recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.   (Cplt. ¶¶62, 72).

Defendant denies SUAREZ's allegations and contends that SUAREZ and all employees were properly compensated at all times.   Defendant further contends that any failure to pay a nominal amount of additional overtime pay to certain employees was due to the failure of those employees to report the overtime hours that they worked.   According to Defendant, employees improperly underreported the hours they worked, in violation of Company policy, because they were subject to a bonus program under which they would only receive bonuses if they did not work overtime.   Defendant argues that, because the value of the bonuses exceeded the value of the overtime compensation, certain employees underreported their hours to receive the bonuses. Defendant further argues that it cannot be held liable for this conduct and, even if it could, the bonuses that the affected employees received exceeded the value of any unpaid overtime pay

and, therefore, they are not entitled to recover damages.  Defendant further contends that it has operated in good faith at all times, and committed no violation – and certainly no willful violation – of the FLSA, the New York Labor Law or any wage and hour law.

### B.  Overview of Investigation

Before initiating this action, Plaintiffs' Attorneys conducted a thorough investigation into the merits of the potential claims and defenses.  Plaintiffs provided copies of their time and compensation records, including their schedules, the times they logged into and out of Defendant's computer system, Defendant's bonus program and Defendant's employee handbook.  Plaintiffs' Attorneys reviewed those documents, and conducted in-depth interviews with each Plaintiff regarding the hours they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims, and Defendant's practices as they related to other hourly employees.  Plaintiffs' Attorneys also reviewed the bankruptcy docket relating to the Chapter 11 Bankruptcy that Defendant filed, to determine whether any portion of the potential claims against Defendant survived bankruptcy.  Based on this investigation, Plaintiffs' Attorneys concluded that not only had Plaintiffs been improperly compensated, but that other employees had also been improperly compensated, in violation of the FLSA and the New York Labor Law.

### C.  Settlement Negotiations

After Defendant was served with the Complaint, Defendant expressed an interest in exploring a potential amicable resolution of the lawsuit.  At the outset, Defendant clarified that employees who arguably had not received their full overtime pay worked for Defendant in New York and California.  Apparently, the alleged underreporting of overtime hours in order to maximize bonuses had only occurred in those states because operations in those states had been

3

overseen by two well-meaning District Managers who, Defendant discovered, cooperated with employees in this effort to maximize employee bonuses.  Therefore, the Parties agreed that any collective resolution would be limited to those states.   Additionally, Defendant filed for bankruptcy protection in July of 2010, and was subsequently discharged on or about February 22, 2011.  Therefore, any claims for unpaid wages before February 22, 2011 were discharged by the Bankruptcy Court's Order.  Based on the foregoing parameters, Defendant determined there were 162 affected current and former employees including Plaintiffs (collectively, the "Collective Action Members").

Defendant compiled its time and pay records for the Collective Action Members. Defendant conducted separate calculations for each Collective Action Member on a week by week basis following the bankruptcy discharge date and determined the number of hours for which each person had not received overtime pay – although Defendant continued (and continues) to maintain that the nominal underpayments were more than offset by bonuses that it had paid to each Collective Action Member.

From there, Defendant determined the amount of compensation that Collective Action Members were arguably owed based on their applicable hourly rates.  Defendant provided Plaintiffs' Attorneys (for settlement purposes only) with spreadsheets setting forth its analyses. (In disclosing these analyses, Defendant provided only Employee Identification Numbers, not names or other identifying information, of individuals other than Plaintiffs.)

Plaintiffs' Attorneys reviewed Defendant's methodology and conducted independent calculations based on the records to ensure the accuracy of the calculations.  During the next several months, counsel for the Parties negotiated a settlement payment to cover the cost of the

alleged unpaid overtime wages, liquidated damages, a service payment to SUAREZ, attorneys' fees and costs, and the cost of a settlement claims administrator.

The gross amount of arguably unpaid overtime compensation to Collective Action Members totals twenty-five thousand seven hundred twelve dollars and ninety-five cents ($25,712.95).  Each Collective Action Member who timely joins this settlement will receive 200% of the compensation that he or she is arguably due, which includes 100% of the allegedly unpaid overtime plus 100% of the allegedly owed liquidated damages.  Attachment 1 to the Settlement Agreement lists each Collective Action Member (by Employee Identification Number) and sets forth the amount that he or she can collect by timely opting into this settlement (the "Individual Gross Amount").  The Claims Administrator will issue payments for the Individual Gross Amounts, less applicable withholding.  Subject to the Court's approval, SUAREZ will also receive a service award of two thousand five hundred dollars ($2,500), as discussed below, less applicable withholding.  The Claims Administrator will issue a payment ("Settlement Check") to each Collective Action Member who timely opts in.  In total, the Parties agree that Defendant will pay a maximum gross settlement amount of ninety-five thousand dollars ($95,000.00) (the "Gross Settlement Payment"), which the Claims Administrator shall deposit in an account titled, "Jennifer Convertibles Qualified Settlement Fund" (the "Settlement Fund").  The final terms of this settlement are memorialized in the Settlement Agreement.

## II.      SUMMARY OF THE SETTLEMENT TERMS

### A.      The Settlement Amount

The Parties have agreed to settle the case for a total of ninety-five thousand dollars ($95,000.00).  That payment is for:  (1) the Collective Action Members' alleged unpaid overtime wages and liquidated damages; (2) a service payment to SUAREZ; (3) attorneys' fees and costs;

and (4) the Claims Administrator's fees and costs.  The Parties agree that Collective Action Members will be solely responsible for paying taxes on any payments that they receive under the settlement, except that, for the portion of the Gross Settlement Payment attributable to wages (a gross maximum total of $25,712.95), Defendant will be responsible for providing the Claims Administrator with sufficient funds, if the Settlement Fund is insufficient, to pay ordinary employer payroll taxes.  The Parties agree that Defendant will make no other payments under the settlement or in connection with this lawsuit.

### B.  Releases

The Parties agree that, as a condition of receiving a "Settlement Check" for allegedly unpaid overtime and liquidated damages (less applicable withholding), a Collective Action Member (including SUAREZ) must release any and all claims and potential claims against Defendant (and related individuals and entities) under state and federal law for any and all wage and hour violations arising between February 22, 2011 and March 22, 2014.

Additionally, as part of this settlement, SUAREZ (who, subject to Court approval, will also receive a supplemental service award payment) is agreeing to release any and all claims arising out of his employment including, but not limited to, wage and hour claims.  The Parties agree that this release is intended to be as broad as legally permissible and will apply to both employment-related and non-employment-related claims up to the time that SUAREZ executes the Settlement Agreement.

### C.  Attorneys' Fees and Litigation Costs

Pursuant to the Settlement Agreement, Plaintiffs' Attorneys will receive, from the Gross Settlement Payment, a gross total of thirty-one thousand eight hundred eighty dollars and ten cents ($31,880.10) as attorneys' fees and costs, which will reimburse Plaintiffs' Attorneys for the

fees, costs and expenses incurred in representing Plaintiffs and obtaining this settlement on behalf of the Collective Action Members (the "Legal Fees").  Any and all taxes owed on the Legal Fees shall be the sole responsibility of Plaintiffs' Attorneys and the Collective Action Members.

**D.**   **Service Award**

The Settlement Check that plaintiff SUAREZ receives with the settlement Notice will include not only his individual award for allegedly unpaid overtime pay and liquidated damages, less applicable withholding, but also an additional payment in the amount of two thousand five hundred dollars ($2,500.00), less applicable withholding, as an extra payment in recognition of the services he has rendered on behalf of the Collective Action Members ("Service Award").

**E.**   **Settlement Claims Administrator**

Plaintiffs' Attorneys have selected Rust Consulting, Inc. to serve as the Settlement Claims Administrator (the "Claims Administrator").  In payment for all services that the Claims Administrator will provide in connection with this settlement, the Claims Administrator shall receive a total gross payment in the amount of nine thousand one hundred ninety-four dollars ($9,194.00) (the "Payment To The Claims Administrator").  The Payment To The Claims Administrator will be paid from the Gross Settlement Payment.  Any and all taxes owed on the Payment To The Claims Administrator shall be the sole responsibility of the Claims Administrator,  Plaintiffs' Attorneys and the Collective Action Members.

**III.**   **SETTLEMENT PROCEDURE**

As set forth in more detail in the Settlement Agreement, the settlement administration process includes the following steps:

1.   Within ten (10) business days after the date on which the Court enters an Approval Order, Defendant will:  (1) issue (by wire transfer to a depository bank chosen by the

Claims Administrator) the Gross Settlement Payment to the Claims Administrator for deposit into the Settlement Fund; and (2) provide the Claims Administrator with an Excel spreadsheet listing each Collective Action Member's name, Employee Identification Number, last known address, telephone number and Individual Gross Amount (collectively, "Personnel Information").  Defendant will provide the spreadsheet only to the Claims Administrator.  The Settling Parties agree that the Personnel Information is highly confidential and that the Claims Administrator must safeguard it.  In this regard, the Claims Administrator may not disclose the spreadsheet or any information from the spreadsheet to Plaintiff or Plaintiff's Attorneys or any non-party for any reason at any time.  Upon receiving the Personnel Information, the Claims Administrator shall attempt to confirm the accuracy of the Collective Action Members' addresses through the United States Post Office's National Change of Address database and shall update addresses as appropriate based on the results.

2.      Within twenty (20) business days after the date on which the Court enters an Approval Order, the Claims Administrator shall mail to each Collective Action Member, in one mailing, a Notice Of Settlement, Consent To Join And Release Form, and Settlement Share Form (collectively, the "Notice Packet").   (The forms of these documents are attached to the Settlement Agreement attached hereto as Exhibit 1.)  The Claims Administrator shall send the Notice Packets by first-class U.S. Mail.  If any Notice Packet is returned as undeliverable, the Claims Administrator shall promptly attempt to locate the intended recipient through an electronic search using the Personnel Information and, upon locating a new address, shall promptly re-mail the Notice Packet to such person at that address.

3.      The "Claim Bar Date" will be the sixty-first (61st) day after the date on which the Claims Administrator places the Notice Packets to Collective Action Members in the mail.  Each

Collective Action Member who, before the Claim Bar Date, completes, executes and returns to the Claims Administrator a Consent To Join And Release Form, shall be deemed a "Qualified Claimant."

4. In the event that the Claims Administrator timely receives a Consent To Join And Release Form that the Collective Action Member failed to complete or sign, the Claims Administrator shall promptly send a letter to the Collective Action Member explaining the deficiencies and giving the Collective Action Member fifteen (15) calendar days to correct them. If the Collective Action Member fails to timely cure the deficiencies, he or she will not be considered a Qualified Claimant.

5. Defense Counsel and Plaintiff's Attorneys will meet and confer in good faith in an effort to resolve any disputes over whether a Collective Action Member has satisfied the requirements set forth in this Agreement to become a Qualified Claimant.

6. In the event that Plaintiff's Attorneys or the Claims Administrator is contacted by a Collective Action Member before the Claim Bar Date and the Collective Action Member indicates that he or she did not receive a Notice Packet, the Claims Administrator shall mail or e-mail an additional Notice Packet to the mailing address or e-mail address that the Collective Action Member provides. However, the deadline for returning the Consent To Join And Release Form shall remain the Claim Bar Date.

7. Within ten (10) business days after the Claim Bar Date, the Claims Administrator shall:  (1) provide a list to Defense Counsel and Plaintiff's Attorneys of the names of all Qualified Claimants; (2) provide electronic copies to Defense Counsel and Plaintiff's Attorneys of all timely received and completed Consent To Join And Release Forms; and (3) provide to

Plaintiff's Attorneys redacted copies of all timely received and completed Consent To Join And Release Forms suitable for filing with the Court.

8.     In no less than fourteen (14) and no more than twenty-one (21) calendar days after providing to Defense Counsel and Plaintiff's Attorneys all of the documents and information set forth in the preceding paragraph, the Claims Administrator shall issue a Settlement Check to each Qualified Claimant.   The Claims Administrator shall ensure that "VOID AFTER 90 DAYS" is printed clearly on each Settlement Check.  The Claims Administrator shall also ensure that the back of each Settlement Check states clearly:

> By signing this check, I hereby reaffirm that I have released Jennifer Convertibles, Inc. (and related individuals and entities) from all wage and hour claims arising between February 22, 2011 and March 22, 2014, under the Fair Labor Standards Act, the California Labor Code, the California Business and Professions Code and the New York Labor Law including, but not limited to, claims for unpaid overtime wages, and liquidated damages and attorneys' fees.

9.     The Claims Administrator shall send each Settlement Check by first-class U.S. Mail to the last known address for each Qualified Claimant or such other address provided by the Qualified Claimant to the Claims Administrator.

10.     Within five (5) business days after receiving redacted Consent To Join And Release Forms from the Claims Administrator, Plaintiff's Attorneys shall file them with the Court.

11.     After twenty-one (21) calendar days have elapsed following the date on which the Court issues an Approval Order, the Claims Administrator shall issue the Legal Fees to Plaintiff's Attorneys, unless any party or non-party has filed a Notice of Appeal from the Approval Order or otherwise challenged the validity of the settlement or any aspect of the settlement.  In the event of such an appeal or other challenge, the Claims Administrator shall not

issue the Legal Fees to Plaintiff's Attorneys until the appeal or other challenge is formally withdrawn or dismissed or the Approval Order is affirmed.

12.     Notwithstanding any other provision of this Agreement, in the event that any party or non-party files a Notice of Appeal from the Approval Order or otherwise challenges the validity of the settlement or any aspect of the settlement, this Agreement shall be deemed stayed, meaning, among other things, that the Claims Administrator shall not issue any checks or payments (including, but not limited to, Settlement Checks).  The stay shall automatically lift only if and when the appeal or other challenge is formally withdrawn or dismissed or the Approval Order is affirmed.

13.     The Claims Administrator shall obtain and maintain copies of the front and back of each Settlement Check that any Qualified Claimant deposits, cashes or otherwise negotiates. Within six (6) calendar months after the Claim Bar Date, the Claims Administrator will provide Defense Counsel with copies of the fronts and backs of these Settlement Checks.

14.     After one hundred twenty (120) calendar days (but no more than one hundred thirty (130) calendar days) have elapsed from the date on which the Claims Administrator issues Settlement Checks to Qualified Claimants, the Claims Administrator shall take all steps necessary to cancel, void and stop payment on any Settlement Checks that have not been deposited, cashed or otherwise negotiated.

15.     The Claims Administrator shall pay the employer's share of payroll taxes for the portion of the payments to Qualified Claimants that are designated as W-2 wages.  The Claims Administrator shall pay the employer's share of payroll taxes using, in the first instance, undisbursed monies from the Settlement Fund.  In the event that these monies are insufficient to satisfy the employer payroll tax obligations, the Claims Administrator shall notify Defendant, in

writing, of the shortfall, and, within thirty (30) calendar days after receiving such notification, Defendant shall issue a payment to the Claims Administrator in that amount.  The Claims Administrator shall pay the outstanding employer payroll taxes.  Other than this payment and the Gross Settlement Payment, Defendant shall not be liable for any other payments, costs or expenses associated with the Litigation or this settlement.

16.     Within six (6) calendar months after the date of the Approval Order, the Claims Administrator will notify Defense Counsel, in writing, of the total amount of funds remaining in the Settlement Fund including, but not limited to:  (1) funds that had been designated for Collective Action Members who failed to return signed and completed Consent To Join And Release Forms; (2) funds remaining because Qualified Claimants failed to deposit, cash or otherwise negotiate their Settlement Checks; and (3) funds remaining for any other reason.  At that time, the Claims Administrator shall also provide Defense Counsel with a list setting forth the name of each Qualified Claimant and the payment that he or she received from the Settlement Fund.

17.     Any and all funds remaining in the Settlement Fund after the Claims Administrator disburses all payments from the Settlement Fund pursuant to this Agreement shall revert to Defendant.  By no later than six (6) calendar months after the date of the Approval Order, the Claims Administrator shall issue a payment to Defendant in the amount of such remaining funds and shall take the necessary steps to close the Settlement Fund.

## IV.      MEMORANDUM OF LAW

### A.  The Parties' Settlement Should Be Approved As Fair and Reasonable.

It has long been established that this Court has authority to supervise a stipulated settlement for paying compensation to workers bringing actions under the FLSA.  See D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946) ("stipulated judgments may be obtained,

where settlements are proposed in controversies between employers and employees over violations of the [Fair Labor Standards] Act, by the simple device of filing suits and entering agreed judgments . . . [and] pleading the issues and submitting the judgment to judicial scrutiny"); Mateo v. Greenwich Vill. Entm't Group LLC, No. 10-CV-2465 (DLC), 2011 U.S. Dist. LEXIS 9467, at *5-6 (S.D.N.Y. Feb. 1, 2011) (approving FLSA settlement where the parties had a bona fide dispute over the issues and the plaintiffs were adequately represented by counsel); Manning v. New York Univ., No. 98-CV-3300 (NRB), 2001 U.S. Dist. LEXIS 12697, at *39 (S.D.N.Y. Aug. 21, 2001) ("it is well-settled that an employee may waive a FLSA claim for unpaid wages or overtime pursuant to a judicially-supervised stipulated settlement").  A court may approve a settlement of FLSA claims upon its determination that the settlement is fair and reasonable.  See Mendez v. Nooch, Inc., No. 07-CV-11174 (LLS) (RLE), 2009 U.S. Dist. LEXIS 128160 at *9 (S.D.N.Y. Jan. 7, 2009) (courts reviewing FLSA settlements "typically examine[] the reasonableness of the settlement in light of the amount owed, the strength of the evidence, and the difficulty of litigating the case"); Lynn's Food Stores Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982) ("the district court may enter a stipulated judgment after scrutinizing the settlement for fairness"); Medley v. Am. Cancer Soc'y, No. 10-CV-3214, 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010) (analyzing fairness of settlement of FLSA action and approving settlement); Hens v. Clientlogic Operating Corp., No. 05-CV-381S, 2010 U.S. Dist. LEXIS 139126, at *5 (W.D.N.Y. Dec. 19, 2010) (approving FLSA settlement where there was "a bona fide dispute" and "the proposed settlement [was] the product of lengthy, vigorous arm's length negotiations between experienced counsel").

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. See Lynn's Food Stores, Inc., 679 F.2d at 1353-54;

Clark, 2010 WL 1948198, at *7; McMahon v. Olivier Cheng Catering & Events, LLC, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Aros v. United Rentals, Inc., Nos. 10 Civ. 83, 11 Civ. 1281, 11 Civ. 1282, 11 Civ. 1283, 11 Civ. 1284, 11 Civ. 1285, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); Dixon v. Zabka, No. 11 Civ. 982, 2013 WL 2391473, at *2 (D. Conn. May 23, 2013).   One factor the Court should consider when reviewing a settlement of an FLSA claim is whether there exists a bona fide dispute as to the amount and/or right to such unpaid wages.   See Mateo, 2011 U.S. Dist. LEXIS 9467, at *4-5; Hens, 2010 U.S. Dist. LEXIS 139126, at *5; Lynn's Food Stores, 679 F.2d at 1354; Brask v. Heartland Automotive Servs., Inc., No. 06-CV-11 (RHK/AJB), 2006 WL 2524212, at *1-2 (D. Minn. Aug. 15, 2006) (adopted by Brask v. Heartland Automotive Servs., Inc., No. 06-CV-11 (RKH/AJB), 2006 U.S. Dist. LEXIS 62313 (D. Minn. Aug. 30, 2006)); Stalnaker v. Novar Corp., 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003).   Other factors the Court may consider in determining whether a settlement is fair and reasonable are "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel."   Pessoa, et al. v. Countrywide Home Loans, Inc., No. 06-CV-1419-Orl-JGG, 2007 U.S. Dist. LEXIS 24076, at *6 (M.D. Fla. Apr. 2, 2007) (adopting factors used in approving class action settlements).

        If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. Lynn's Food Stores, 679 F.2d 1354; Clark, 2010 WL 1948198, at *7; McMahon, 2010 WL 2399328, at *6.   As set forth more fully below,

consideration of these factors weighs entirely in favor of this Court's approval of the Parties' settlement as fair and reasonable.

### A.    The Settlement Terms Are Fair and Reasonable

Courts asked to approve FLSA overtime settlement agreements operate under a "strong presumption in favor of finding a settlement fair." Pessoa, 2007 U.S. Dist. LEXIS 24076, at *6 (approving parties' settlement agreement in a FLSA overtime case) (citation omitted); Hens, 2010 U.S. Dist. LEXIS 139126, at *6-7 (approving as fair FLSA wage and hour overtime pay settlement that awarded back pay and provided individual settlement payments plus incentive payments to named plaintiffs in exchange for release of claims).

### 1.    Numerous Disputed Issues Exist

In reviewing whether the settlement of an FLSA claim is fair, courts consider whether bona fide disputes exist among the parties. See Mateo, 2011 U.S. Dist. LEXIS 9467, at *4-5; Lynn's Food Stores, 679 F.2d at 1354; Brask, 2006 WL 2524212 at *2; Stalnaker, 293 F. Supp. 2d at 1263.  Here, the settlement amount is especially reasonable given the numerous genuine issues in dispute between the Parties at this time, and the legitimate litigation risks that those issues present.  The Parties have differing opinions regarding the merits of Plaintiffs' claims.  At the same time, the Parties recognize the risks and costs inherent in further litigation and pursuing this matter through trial on the merits.  Courts routinely approve such settlements where parties wish to avoid the risks of further litigation and appellate practice.   See Scott v. City of New York, No. 02-CV-9530 (SAS), 2009 U.S. Dist. LEXIS 120532, at *7 (S.D.N.Y. Dec. 21, 2009) ("Because this case involves many questions of first impression – including the meal period issue – the outcome of the appeal is all the more difficult to predict.").

Under the FLSA, non-exempt employees are entitled to overtime compensation only for those hours worked in excess of forty (40) per week.  See 29 U.S.C. § 207(a)(1).  The Parties

dispute whether Plaintiffs intentionally underreported their hours or Defendant intentionally shorted their hours to avoid paying them overtime compensation.  Plaintiffs contend that Defendant knowingly violated the FLSA by failing to properly pay Plaintiffs, and thus, is liable for statutory liquidated damages under 29 U.S.C. § 216 (b), while Defendant contends that it acted in good faith at all times and is not liable for liquidated damages because Plaintiffs intentionally underreported their hours and as a result, received bonuses to which they were not entitled.  See 29 U.S.C. § 260; see also Walton v. United Consumers Club, 786 F.2d 303, 308 (7th Cir. 1986).  The Parties also dispute whether Plaintiffs are entitled to liquidated damages. Moreover, Defendant maintains that it has other viable defenses to these claims.  Among other things, according to Defendant, this settlement covers alleged unpaid overtime claims arising more than the three year maximum provided by the FLSA's statute of limitations.  Nonetheless, Defendant was willing to include those claims in calculating the Gross Settlement Payment in order to avoid the cost and disruption of litigation.

Indeed, Defendant contends its conduct was not willful.  Consequently, Defendant maintains that a two (2) year statute of limitations under the FLSA should apply to the claims in this case.  Plaintiffs allege that Defendant willfully disregarded their rights by failing to compensate them for all of the hours they worked, therefore, that the FLSA limitations period should be extended from two (2) years to three (3) under 29 U.S.C. § 255(a).  If Defendant were to prevail on this issue, all of claims would be limited by the two (2) year statute of limitations – and some Collective Action Members' claims would be barred entirely from any recovery. Nevertheless, to resolve the claims in this case, Defendant has agreed to include in the calculation of the Gross Settlement Payment alleged unpaid overtime payments from February

16

22, 2011, to March 22, 2014, which time period encompasses *more than* the FLSA's three (3) year statute of limitations.

## 2.    There Is No Evidence of Fraud or Collusion.

There is no evidence of any fraud or collusion behind the Parties' settlement.  See Pessoa, 2007 U.S. Dist. LEXIS 24076, at *6; Scott,2009 U.S. Dist. LEXIS 120532, at *6.  Instead, Plaintiffs and Plaintiffs' Attorneys conducted a thorough investigation, including a review of computer log in/out records and compensation records, and an evaluation of the compensation they received.  Plaintiffs and Plaintiffs' Attorneys also reviewed Defendants' bonus program. After the case was filed, Plaintiffs also worked with defense counsel to engage in an informal exchange of time and compensation records for Plaintiffs and a sampling of the Collective Action Members to calculate their damages.  Counsel for the Parties assessed the documents and prepared detailed damage charts.  Ultimately, the Collective Action Members are being paid all the unpaid overtime wages and liquidated damages that they are arguably owed for a period in excess of the FLSA's three (3) year statute of limitation.  This effort demonstrates no fraud or collusion, but instead a collaborative effort to ensure the Collective Action Members are properly compensated under the Settlement Agreement.

## 2.    The Complexity, Expense and Likely Duration of the Litigation, As Well As the Probability of Success on the Merits Weight in Favor of a Finding of Reasonableness.

The complexity of the issues presented by these cases suggests that further litigation would be exceedingly time-consuming and costly.  See Pessoa, 2007 U.S. Dist. LEXIS 24076, at *6.  In addition, the probability of Plaintiffs' success on the merits is disputed by the Parties.  As described above, the Parties disagree on a number of grounds as to whether Plaintiffs can recover anything, and this warrants approval of the settlement.  See Mateo, 2011 U.S. Dist. LEXIS 9467,

at *5.  Further, there was a risk that if Plaintiffs sought conditional certification of a collective action, Plaintiffs could have been unsuccessful on such a motion, after spending a significant amount of time and money briefing that motion.  Further, a trial on the merits would involve significant risks for Plaintiffs and the Collective Action Members because Defendant contended Plaintiff and the Collective Action Members intentionally underreported their hours to receive a bonus.  Under Defendant's bonus program, Collective Action Members would only receive a bonus of they worked less than forty (40) hours in a workweek.  Therefore, if Collective Action Members now receive compensation for hours that they intentionally underreported, they are receiving overtime compensation *in addition to* their bonuses, which Defendant contends they were not lawfully entitled to receive.  For this reason, Defendant contended that Collective Action Members were overpaid because their bonuses were more than their overtime compensation.  Had this action proceeded to trial, Defendant could have potentially prevailed on this argument, in which case, Plaintiff and the Collective Action Members would receive no compensation, and Defendant may have even sought to recover the overpayment.

The damages being paid to the Collective Action Members are also reasonable under the circumstances.  Plaintiffs are receiving compensation for all of the overtime hours for which they were arguably not compensated looking back to February 22, 2011, which is outside the FLSA's three (3) year statute of limitations.  Therefore, Plaintiffs and the Collective Action Members are recovering all unpaid wages under the FLSA that they would have had they proceeded to trial.  Additionally, they are receiving an equal amount as liquidated damages, although there remains a bona fide dispute as to whether Defendant acted in good faith.  Still further, the Collective Action Members are being allowed to retain the bonuses that they previously received and to

which Defendant contends they were not entitled.   Therefore, there is no compromise of the Collective Action Members' alleged claims.

Thus, given the many issues in dispute, the amount of money offered to the Plaintiff and the Collective Action Members, and other considerations as outlined above, the Parties submit that the settlement is fair and reasonable and should be approved by the Court.

**B.  The Court Should Approve the Proposed Notice and Direct Its Dissemination to the Plaintiffs.**

The Parties have agreed upon a proposed Notice to Collective Action Members that reflects the material terms of the Settlement Agreement and provides the Collective Action Members with a mechanism for obtaining a share of the settlement.   The Parties respectfully request that the Court approve the proposed Notice.   The proposed Notice sufficiently informs the Collective Action Members of the terms of the settlement, including the method of calculating the damages, the amount to which they are entitled, the opt-in process, the scope of the release and the payment of attorneys' fees and costs.   See Morris v. Affinity Health Plan, Inc., No. 09 Civ. 1932, 2011 WL 6288035, at *3 (S.D.N.Y. Dec. 15, 2011) ("The Proposed Notice is appropriate because it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing"); Torres v. Gristede's Operating Corp., Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937, at *3 (S.D.N.Y. June 1, 2010) (substantively same).   The Settlement Agreement establishes reasonable and fair procedures for the Claims Administrator to disseminate the Notice (via first class mail, with skip trace for those returned as undeliverable).   Such mailed notice procedures are fair and reasonable in these types of settlements.   See Danieli v. Int'l Business Machines Corp., No. 08-CV-3688 (SHS), 2009 U.S. Dist. LEXIS 106938, at *6-7 (S.D.N.Y. Nov. 16, 2009) (certifying FLSA settlement class and

approving class notice and claim form submitted to the court for approval and authorizing dissemination via first class mail by settlement administrator); In Re Janney Montgomery Scott LLC Fin. Consultant Litig., No. 06-CV-3202, 2009 U.S. Dist. LEXIS 60790, at *20-22 (E.D. Pa. July 16, 2009) (analyzing fairness of settlement of hybrid Rule 23 class action and FLSA collective action under class action criteria and approving settlement including mailed notice). Accordingly, the Court should approve the Notice and direct the Parties to disseminate it in accordance with the provisions of the Agreement.

### C.  The Service Payment to the Plaintiff SUAREZ Should Be Approved As Fair and Reasonable.

The request for approval of a service payment of $2,500.00 to Plaintiff SUAREZ is fair and reasonable. Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. See, e.g., Aros, 2012 WL 3060470, at *3; McMahon, 2010 WL 2399328, at *8-9 (standard for granting service awards includes "existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.") (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200-01 (S.D.N.Y.1997)); Clark, 2010 WL 1948198, at *9; Parker v. Jekyll & Hyde Entm't Holdings, L.L.C., No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); Velez v. Majik Cleaning Serv., No. 03 Civ. 8698, 2007 WL 7232783,

at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or coworkers").

"Incentive awards . . . are within the discretion of the court." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (discussing service awards in a Rule 23 class action settlement).  In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiff; (2) time and effort expended by the named plaintiff in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. See Id. Here, SUAREZ satisfies all three factors.  *First*, in this settlement on behalf of a FLSA § 216(b) collective, SUAREZ agreed to bring the action in his name. In so doing, he assumed the risk of retaliation and blacklisting. Id. See Frank, 228 F.R.D. at 187 (Incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or coworkers"); *see also* Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."); Velez, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").  Even where there is not a record of actual retaliation, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members. See Frank, 228 F.R.D. at 187-88 ("Although this

Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded").

*Second*, SUAREZ should be awarded a service payment for the work he undertook on behalf of the Collective Action Members. He expended time and effort to assist in the preparation of the Complaint, provided Plaintiffs' Attorneys with relevant information, and assisted counsel in the investigation of the claims at issue, and the finalization of this settlement. Courts recognize the important factual knowledge that named plaintiffs bring to employment class and collective actions, including information about employer policies and practices that affect compensation. See Frank, 228 F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents). *Third*, the amount of the requested service award is consistent and reasonable with awards given in class and collective actions. Palacio v. E*Trade Fin. Corp., No. 10 Civ. 4030, 2010 WL 2384419, at *7 (S.D.N.Y. June 22, 2012) (approving service award of $3,000.00); In re Wells Fargo Loan Processor Overtime Pay Litig., MDL No. 07-1841, 2011 WL 3352460, at *11 (N.D. Cal. Aug. 2, 2011) (approving incentive awards of $1,000 each for six opt-in plaintiffs); Wren v. RGIS Inventory Specialists, No. 06 Civ. 5778, 2011 WL 1230826, at *38 (N.D. Cal. Apr. 1, 2011) supplemented, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (approving incentive award of $2,500).

**D.  Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**[1]

The FLSA provides for reasonable attorneys' fees and costs. See 29 U.S.C. § 216(b) ("The court in [an action to recover under FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").  Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." Sand v. Greenberg, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. See Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978), cert. denied, 441 U.S. 944 (1979) (observing that "broad remedial purpose" of FLSA should be given "liberal construction"); Aros, 2012 WL 3060470, at *4; Willix v. Healthfirst, Inc., 2011 WL 754862, at *6 (collecting cases); Vazquez v. Ranieri Cheese Corp., No. 07 Civ. 464, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[T]he fee provisions contained in the FLSA and New York Labor Law were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements.") (citation omitted); McMahon, 2010 WL 2399328, at *7. deMunecas v. Bold Food, LLC, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010); Sand, 2010 WL 69359, at *3 (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

---

[1] The representations in this section regarding the amount of time that plaintiffs' counsel spent on this case and their hourly rates and fees, and related information, are solely the representations of plaintiffs' attorneys.  Defendant and defense counsel lack any knowledge as to the accuracy of these representations.

Defendant has agreed that the Gross Settlement Payment includes Legal Fees in the amount of thirty-one thousand eight hundred eighty dollars and ten cents ($31,880.10) for attorneys' fees and costs.  The work that Plaintiffs' Attorneys have performed in litigating and settling this case demonstrates their commitment to the Collective Action Members and representing their interests.  Plaintiffs' Attorneys have committed substantial resources to prosecute this case.  The work that Plaintiffs' Attorneys have performed, including investigating the claims and defenses, preparing pleadings and motions, reviewing documents, calculating damages, and negotiating the settlement terms and preparing settlement documents, was significant and contributed to the successful resolution of the claims of not only Plaintiffs, but the entire class of affected current and former employees. See Capsolas v. Pasta Resources Inc., No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct. 5, 2012), (approving requested fee where "[t]he work that Class Counsel . . . performed in litigating and settling th[e] case demonstrate[d] their commitment to the class and to representing the class's interests").

Since the inception of this action, Shavitz Law Group, P.A. ("SLG") and Jaffe Glenn Law Group, P.A. ("JG") have spent 162.6 attorney, paralegal, and support staff hours prosecuting this case.[2] The time spent by SLG is as follows:

| Timekeeper | Hourly Rate | Hours | Totals |
|---|---|---|---|
| Gregg Shavitz | $350.00 | 16.1 | $5,635.00 |
| Camar Jones | $300.00 | 94.3 | $28,290.00 |
| Paralegal – Renata Araujo | $100.00 | 1.9 | $190.00 |
| Total | | 112.30 | $34,115.00 |

---

[2] The attorneys' fee and cost ledgers for JG and SLG are appended as Attachment 2.

The time spent by JG is as follows:

| Timekeeper | Hourly Rate | Hours | Totals |
|---|---|---|---|
| Jodi Jaffe | $350.00 | 5.0 | $1,750.00 |
| Andrew Glenn | $400.00 | 18.5 | $7,400.00 |
| Paralegals – Timothy Kaufman, Iris Espichan, Carlos Rivera, Debora Ros | $95.00 | 26.8 | $2,546.00 |
| **Total** | | **50.3** | **$11,696.00** |

Plaintiffs' Attorneys have also incurred $1,124.00 in out of pocket costs prosecuting this case, including the filing fee, service of process on Defendant, and documents related to pro hac vice admissions for Andrew Glenn, Gregg Shavitz and Camar Jones.  Ultimately, Plaintiffs' Attorneys incurred a total of $46,935.00 in attorneys' fees and costs.  However, Plaintiffs' Attorneys are recovering $31,880.10 as part of the settlement.  Therefore, Plaintiffs' Attorneys are accepting a 32% discount in their fees and costs to resolve this action.  This fact further demonstrates the reasonableness of the attorneys' fee and cost award.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court: (a) approve as fair, adequate and reasonable the settlement set forth in the Settlement Agreement and Release; (b) conditionally certify the asserted class for the purposes of settlement; (c)  approve the proposed Settlement Notice and direct its distribution; (d) approve service payment of $2,500.00 to plaintiff SUAREZ; (e) dismiss this action with prejudice, but reserve jurisdiction to enforce the terms of the Settlement Agreement.

Respectfully submitted this 22nd day of October, 2014.


JAFFE GLENN LAW GROUP, P.A.

/s/ Jodi J. Jaffe
Jodi J Jaffe, Esq.
Andrew Glenn, Esq.
Lawrence Office Park, Bldg. 2, Suite 220
168 Franklin Corner Road
Lawrenceville, New Jersey 08648
Telephone: (201) 687-9977
Facsimile: (201) 595-0308
Attorneys for Plaintiff
Francisco Suarez


DRINKER BIDDLE & REATH LLP

/s/ Lynne Anne Anderson
Lynne Anne Anderson, Esq.
William R. Horwitz, Esq.
600 Campus Drive
Florham Park, New Jersey 07932
Telephone:  (973) 549-7140
Facsimile:  (973) 360-9831
Attorneys for Defendant
Jennifer Convertibles, Inc.

SHAVITZ LAW GROUP, P.A.

/s/ Gregg I. Shavitz
Gregg I. Shavitz, Esq. (admitted pro hac vice)
Camar Jones, Esq. (admitted pro hac vice)
1515 South Federal Highway
Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
Attorneys for Plaintiff
Francisco Suarez